UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13-cr-00001-JAW-1 |
| | ) | |
| JAMES M. CAMERON | ) | |

**ORDER ON EXPEDITED MOTION FOR REDUCTION OF SENTENCE**

Having apparently completed a one-hundred-and-sixty-five-month sentence for child pornography offenses, a defendant, now serving a twenty-four-month consecutive sentence for criminal contempt, seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The court dismisses the defendant's motion because the 18 U.S.C. § 3553(a) factors counsel against his early release and he failed to present "extraordinary and compelling reasons" for sentence reduction.

## I. PROCEDURAL BACKGROUND[1]

### A. The Child Pornography Charge: 1:09-cr-00024-JAW-1[2]

This case has a complicated procedural background which warrants description. On February 11, 2009, a federal grand jury returned a sixteen-count indictment charging Mr. Cameron with knowingly transporting, receiving, and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(1), (a)(2), and (a)(5)(B). *Indictment* (ECF No. 3). The Court granted the Government's motion to dismiss Count 16 before trial. *Oral Mot.* (ECF No. 182); *Oral Order* (ECF No. 183).

---

[1]     In light of the dockets of the two criminal cases totaling over 400 entries cumulatively, Court assumes the parties' familiarity with the factual record and thus confines its discussion to the procedural history.

[2]     Unless otherwise noted, all docket entries referenced in this section are to Case No. 1:09-cr-00024-JAW-1.

On August 23, 2010, after a six-day bench trial, the Court acquitted Mr. Cameron of Counts 2 and 8 and convicted him of the remaining thirteen counts. *Oral Ct. Verdict* (ECF No. 179).  On March 11, 2011, the Court sentenced Mr. Cameron to 192 months in prison on each of Counts 1, 3-7, and 9-14, as well 120 months on Count 15, all to be served concurrently. *Sentencing Order* (240); *J.* at 2 (ECF No. 241).

On November 14, 2012, the United States Court of Appeals for the First Circuit affirmed Mr. Cameron's convictions on Counts 6, 7, 9, 10, 12, 13, and 15, but reversed his convictions on Counts 1, 3, 4, 5, 11, and 14.  *United States v. Cameron*, 699 F.3d 621, 654 (1st Cir. 2012).  The First Circuit overturned the counts relating to Mr. Cameron's upload of child pornography images to his Yahoo! accounts, finding that admission of Yahoo! receipts associated with those uploads and admission of CyberTipline Reports from the National Center for Missing and Exploited Children (NCMEC) violated his rights under the Confrontation Clause of the Sixth Amendment.  *Id.* at 642-52.  The First Circuit vacated Mr. Cameron's sentence as to those counts that it reversed, *id.* at 654, and suggested that on remand this Court "consider . . . whether its original calculation of the number of photos attributable to Cameron is still valid in light of the reversal of the convictions on Counts One, Three, Four, Five, Eleven, and Fourteen."  *Id.* at 653.

The First Circuit remanded the case to this Court "for further proceedings consistent with this opinion, including a new trial on Counts One, Three, Four, Five, Eleven, and Fourteen, if the government wishes to so proceed."  *Id.* at 654.  On January 14, 2013, the Government filed a notice of intent, stating that it "will ask the

Court to resentence Defendant on Counts 6, 7, 9, 10, 12, 13 and 15 of the Indictment." *Gov't's Am. Notice of Intent* at 1 (ECF No. 320).  The Government represented that after resentencing, "it is the Government's intention to move to dismiss Counts 1, 3, 4, 5, 11, and 14" and noted that it had dismissed Count 16 before trial and that the Court had acquitted Mr. Cameron on Counts 2 and 8.  *Id.*

### B.    The Criminal Contempt Charge: No. 1:13-cr-00001-JAW-1[3]

The day after the First Circuit issued its decision, Mr. Cameron fled the state of Maine in violation of his release conditions.[4]  *Order on Bail Conditions*, No. 1:09-cr-00024-JAW-1 (ECF No. 273).  On November 15, 2012, the Government moved to revoke Mr. Cameron's release and requested a warrant for his arrest; the Court granted the motion the same day.  *Mot. to Revoke Bail and Issue Arrest Warrant*, No. 1:09-cr-00024-JAW-1 (ECF No. 299); *Order*, No. 1:09-cr-00024-JAW-1 (ECF No. 300).  On December 2, 2012, the U.S. Marshal's Service arrested Mr. Cameron on that warrant in Albuquerque, New Mexico.  *Prosecution Version* at 2 (ECF No. 15).  On January 2, 2013, the Government filed a notice of information charging Mr. Cameron with criminal contempt in violation of 18 U.S.C. § 401(3).  *Notice/Info.* (ECF No. 1).  On February 19, 2013, Mr. Cameron pleaded guilty to the criminal contempt charge.  *Min. Entry* (ECF No. 16).

---

[3]       Unless otherwise noted, all docket entries referenced in this section are to Case No. 1:13-cr-00001-JAW-1.
[4]       Mr. Cameron was on bail with GPS ankle monitoring pending resolution of his appeal.  *United States v. Cameron*, 756 F. Supp. 2d 148 (D. Me. 2010) (denying motion for release pending sentencing); No. 1:09-cr-00024-JAW, 2011 U.S. Dist. LEXIS 49809 (D. Me. May 9, 2011) (denying motion for release pending appeal); *Order of United States Court of Appeals for the First Circuit* (ECF No. 267) (Aug. 9, 2011) (granting motion for bail pending appeal); 2011 U.S. Dist. LEXIS 89629 (D. Me. Aug. 11, 2011) (releasing Mr. Cameron on bail in accordance with the First Circuit order).

### C.    The December 17, 2014 Dual Sentencing[5]

The Court sentenced Mr. Cameron in both cases on December 17, 2014.  In Case No. 1:09-cr-00024-JAW-1, after reducing Mr. Cameron's guideline range in compliance with the First Circuit mandate, the Court sentenced Mr. Cameron to 165 months imprisonment on Counts 6, 7, 9, 10, 12, and 13 and 120 months on Count 15, to be served concurrently; six years of supervised release; $700 in special assessments; and $2,500 in restitution.  *Am. J.*, No. 1:09-cr-00024-JAW-1 (ECF No. 342).  The Court sentenced Mr. Cameron in Case No. 1:13-cr-00001-JAW-1 to twenty-four months of imprisonment, to be served consecutively with the sentence imposed in No. 1:09-cr-00024-JAW; six years of supervised release, to be served concurrently to the supervised release imposed in No. 1:09-cr-00024-JAW; and a $100 special assessment.  *J.* (ECF No. 34).

On September 16, 2024, Mr. Cameron filed an expedited motion for sentence reduction in Case No. 1:13-cr-00001-JAW-1 in which he argues that his family circumstances present extraordinary and compelling reasons for his early release pursuant to U.S.S.G. § 1B1.13(b)(3)(A); he alternatively asserts he is entitled to compassionate release pursuant to the "other reasons" category in U.S.S.G. § 1B1.13(b)(5).  *See Expedited Mot. for Reduction of Sentence* (ECF No. 40) (*Def.'s Mot.*). On October 7, 2024, the Government filed their opposition Mr. Cameron's motion. *Gov't's Obj. to Def.'s Mot. for Compassionate Release* (ECF No. 42) (*Gov't's Opp'n*).  On

---

[5]    Unless otherwise noted, all docket entries referenced in this section are to Case No. 1:13-cr-00001-JAW-1.

November 4, 2024, Mr. Cameron submitted his reply. *Reply to Gov't's Resp. in Opp'n to Mot. to Reduce Sentence* (ECF No. 49) (*Def.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Mr. Cameron's Expedited Motion for Sentence Reduction[6]

Mr. Cameron reports that he is consecutively serving a total sentence of 189 months, which is effectively reduced to "just over 160 months" when accounting for "statutory 'good time.'" *Def.'s Mot.* at 4.[7]  He avers that, as of July 16, 2024, he had served 150 months of his 160-month sentence, equivalent to nearly 94%.  *Id.* Calculating that, when the "good time" reduction is considered, his statutory sentence amounts to 140.25 months for the child pornography charges and 20.40 months for the criminal contempt charge, Mr. Cameron argues that he has "fully served" the

---

[6]    Mr. Cameron separately filed motions to redact and seal his motion for sentence reduction. *Mot. for Order Authorizing Redaction* (ECF No. 41); *Def.'s Mot. to Seal Doc.* (ECF No. 39).  He also submitted both an unredacted and a redacted version of his motion for early release. *See Def.'s Mot.*; *Redacted Mot. to Reduce Sentence* (ECF No. 48).  Further, the Government filed motions to seal its objections to both Mr. Cameron's motion for compassionate release and to Mr. Cameron's motion for an order authorizing redaction "[t]o avoid disclosure of the information while awaiting the Court's decision on the Defendant's motion[s]." *Mot. to Seal Gov't's Obj. to Def.'s Mot. for Compassionate Release* at 1 (ECF No. 46); *Mot. to Seal Gov't's Obj. to Def.'s Mot. for Order Authorizing Redaction* at 1 (ECF No. 47).  On December 12, 2024, the Court dismissed without prejudice the parties' motions to seal and redact Mr. Cameron's motion for sentence reduction and the Government's objections to the same. *Order on Motions to Redact and Seal* (ECF No. 50).  Accordingly, the Court discusses and cites Mr. Cameron's unredacted motion for sentence reduction in this Order.

The Court does, however, follow the First Circuit's directives in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) on the proper balance between individual privacy and the right of public access to "judicial records."  The *Kravetz* Court discussed the question of medical information specifically and distinguished between medical or psychological information that is "peripheral" and would only serve to "gratify public spite or promote public scandal" and information that is "necessary to the public's appreciation of the sentence imposed." *Id.* at 63.

In its discussion of Mr. Cameron's son's medical information that the Defendant shared in support of his motion for compassionate release, the Court thus takes care to discuss only the information that is "necessary to the public's appreciation of the sentence imposed." *See id.*  Moreover, the Court does not include personally identifying information or medical history or conditions that are only "peripheral" to the present order. *See id.*  In line with *Kravetz*, the Court refers to Mr. Cameron's ex-wife and son by their respective initials in this order.

[7]    Mr. Cameron's motion for sentence reduction does include page numbers that proceed chronologically.  The Court, in referencing Mr. Cameron's motion, thus cites to the page numbers reflected in the ECF number.

sentence imposed on the child pornography offenses and has ten months left to serve on the contempt of court conviction. *Id.* at 6. Thus, he opines that his "request for sentence reduction is effectively for a ten-month reduction in the 24-month sentence for contempt of court." *Id.*

At bottom, Mr. Cameron urges the Court to reduce his sentence to time served plus fourteen days pursuant to 18 U.S.C. § 3582(c)(1)(A) "because extraordinary and compelling circumstances exist, the request is consistent with the applicable policy statements issued by the Sentencing Commission, and the factors in 18 U.S.C. § 3553(a) weigh in favor of release." *Id.* at 2.

### 1.    Extraordinary and Compelling Reasons

### a.    Mr. Cameron's Family Circumstances

Mr. Cameron primarily argues that he is entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his family circumstances. He informs the Court that his ex-wife, B.C., is the sole caregiver for their twenty-nine-year-old son, D.C, who "was diagnosed at a young age with Autism and Obsessive[-]Compulsive Disorder [OCD]." *Id.* at 8. The Defendant asserts that his "criminal conduct that led to a long prison sentence had a devastating impact on [his] family," and reminds the Court that it "gave Mr. Cameron a considerable downward departure" at sentencing out of sympathy to his wife and son. *Id.* He says that having sole caregiving responsibilities for a child with autism and OCD is difficult for B.C. and points the Court to "the complete factual details" set forth in Mr. Cameron's administrative request for sentence reduction. *Id.* (citing *id.*, Attach. 1, *Request to*

*Warden of FCI Englewood for Sentence Reduction* at 4-8 (ECF No. 40-1) (*Admin. Req.*)).

In his administrative request, Mr. Cameron says that B.C. suffers "extreme hardship . . . every day as [D.C.]'s sole caregiver." *Admin. Req.* at 4. Mr. Cameron says that his son was nineteen years old when Mr. Cameron was sentenced, and "[B.C.]'s decade as a single mother of a son with Autism has taken a terrific toll on her and has now become a crisis." *Id.* He reports that B.C. is "exhausted and burnt out," and in "need [of] assistance . . . from someone who understands [D.C.]'s needs and can manage his behavioral issues with love and compassion. [The Defendant]'s release would provide [her] with relief from the psychological toll placed on [her]." *Id.* at 5 (quoting *Def.'s Mot.*, Attach. 3, *Index of Apps.* at App. A (ECF No. 40-3) (*B.C. Letter*). Mr. Cameron quotes further from B.C.'s letter:

> My son's needs are both physical and behavioral. His OCD often manifests itself as unreasonable, impossible demands of those around him. I have worked with him for years on strategies to contain his anger, but [his] gaining the insight required to do this is a near impossible task for someone with Autism. He can become angry quickly if denied his "orders." When this anger turns into a physical altercation, he has blocked me in my room, pushed me down stairs, and shoved me against the walls. [D.C.] is 5'10", 260 lbs[.] and I am 5'1", 105 lbs. I desperately need an alternative caregiver to take some of the burden off me. Having [the Defendant] nearby could provide me with breaks during the week or even time away.

*Id.* (quoting *B.C. Letter*).

Mr. Cameron notes that B.C. is sixty-two years old. *Id.* He adds that he and B.C. have "discussed whether it is necessary to place [D.C.] in a[n] institutional setting several times in recent years, although the expectation of my getting out of

prison has given us hope that this will not be necessary.  In any event, few if any such placement options are available in Maine." *Id.*  The Defendant insists that "there are no other family members or other persons who can provide the needed care for [D.C.] other than myself." *Id.* at 6.  He reports that his daughter lives in Connecticut and is "too far away to provide care"; while B.C.'s sister and brother-in-law "have been able to offer [B.C.] some relief over the years, . . . [D.C.]'s size and violent behavior no longer make that possible for either of us." *Id.* (quoting *Def.'s Mot.*, Attach. 3, *Index of Apps.* at App. B (ECF No. 40-3) (*B.C. Fam. Letter*).  Mr. Cameron avers that "it exacerbates [D.C.]'s behavior problems to be with [B.C.] constantly." *Id.*

The Defendant also argues that his early release would benefit D.C.  He notes that D.C. has recently been diagnosed with Type II diabetes and posits "I know that I can provide somewhat more food discipline if I can spend time with [D.C.] in an environment that is new to him . . .. to help him overcome some bad eating habits." *Id.* at 7.  Further, the Defendant asserts that if he is granted early release, D.C. can eventually spend weekends with him in Portland, which would "broaden his social and environmental horizons considerably." *Id.*  Exposure to new situations assists the development of "new coping mechanisms and social scripting," which Mr. Cameron says is critical for persons with autism.  *Id.*

The Defendant's legal argument is that "[B.C.]'s situation with [D.C.]" either meets the criteria for compassionate release in U.S.S.G. § 1B1.13(b)(3), or "is similar in gravity" to this criteria pursuant to U.S.S.G. § 1B1.13(b)(5) "so as to constitute an extraordinary and compelling set of circumstances that justify a 10-month sentence

reduction on a 196-month sentence." *Id.* at 8.  He reports that the 2023 amendments to 18 U.S.C. § 3582(c), which came into effect on November 1, 2023, included "the incapacitation of the caregiver of the . . . defendant's child who is 18 years or older and incapable of self-care because of a mental or physical disability or a medical condition" as a "family circumstance" amounting to an extraordinary and compelling reason for early release.  *Def.'s Mot.* at 6-7 (citing U.S.S.G. § 1B1.13(b)(3)(A)).  He also notes that the 2023 amendments clarified the "other reasons" category for sentence reduction, pursuant to which extraordinary and compelling circumstances may exist when "the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [§ 1B1.13(b)(1)-(4)] are <u>similar in gravity</u> to those reasons."  *Id.* at 7 (quoting U.S.S.G. § 1B1.13(b)(5)) (emphasis and alterations added by Defendant).  Finally, Mr. Cameron notes that the Guidelines now clarify that any circumstances establishing extraordinary and compelling reasons need not have been "unfor[e]seen at the time of sentencing."  *Id.* at 7-8 (quoting U.S.S.G. § 1B1.13(e)).

The Defendant argues that his circumstances are extraordinary and compelling pursuant to these recent amendments to the Sentencing Guidelines, and the Court should grant his early release.  *Id.* at 10-11.  He notes, first, that the Sentencing Guidelines no longer require that the extraordinary and compelling circumstance was "unforeseen" at the time of sentencing; and, second, that B.C. is functionally "'incapacitated' from being able to provide D.C. ongoing care in the sense that she has 'become deprived of the ability, qualification, or strength' to do so."  *Id.*

9

at 10 (quoting *Incapacitated*, RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY (4th ed. 1999) (citation fixed)).  On this point, he adds that even if the Court concludes that B.C. is not, strictly speaking, "incapacitated," her situation as D.C.'s only caregiver is "similar in gravity" to such a situation and asserts that the Court should consider the Sentencing Commission's rejection of the "'nature and circumstances' similarity requirement is determinative" in this case.  *Id.* at 11.  In addition, he notes that § 1B1.13(b)(3)(A) "relating to incapacitation of a parent caregiver does <u>not</u> require a showing by the inmate that the incapacitated caregiver is the 'only available' caregiver for the child,'" in contrast to U.S.S.G. § 1B1.13(b)(3)(B), (C), which deals with caregivers for a spouse, registered partner, or parent.  *Id.* (emphasis added by Defendant).  Nevertheless, Mr. Cameron avers that his administrative request for sentence reduction shows that B.C. "is in fact the only available caregiver for D.C."  *Id.* (citing *Admin. Req.*).

Next, Mr. Cameron directs the Court to a case from the Eastern District of New York, which he describes as "strikingly similar" to his own situation and claims "strongly support[s] the granting of this motion."  *Id.* at 11 (citing *United States v. Donato*, No. 03-cr-929, No. 05-cr-060, 2024 U.S. Dist. LEXIS 27620 (E.D.N.Y. Feb. 16, 2024).  In *Donato*, Mr. Cameron says, a defendant had served 91% of his sentence (accounting for good time reduction) and the district court granted a thirteen-month sentence reduction after finding he had shown extraordinary and compelling reasons based on (1) his family circumstances including a "special-needs son [] who would greatly benefit from the caregiving and support [the Defendant] would provide," (2)

10

the "'twice as punitive harsher than usual continuing prison conditions due to the COVID-19 pandemic,'" and (3) "his remarkable post-conviction rehabilitation over the past nearly 18 years." *Id.* at 11-12 (citing *Donato*, 2024 U.S. Dist. LEXIS 27620, at *13-14). Mr. Cameron emphasizes that the district court "specifically found that Mr. Donato's family situation by itself 'support[s] a finding that extraordinary and compelling reasons warrant a reduction in sentence,'" where the defendant's sentence prevented him from "participating in his son's educational decisions, job search, and 'help[ing] hi[m] participate in social activities.'" *Id.* at 12 (citing *Donato*, 2024 U.S. Dist. LEXIS 27620, at *14, 16). Mr. Cameron argues that Mr. Donato's son's medical conditions and Down Syndrome diagnosis "appear[s] . . . less debilitating" than D.C.'s medical condition, "in that D.C. is incapable of engaging in any sort of employment whatsoever." *Id.* The Defendant adds that "D.C. suffers from conditions that are partially treatable with various mood-stabilizing medications, as well as Type 2 Diabetes, which involve frequent doctor's visits that Mr. Cameron is unable to attend and assist with decision-making." *Id.* at 12-13. Mr. Cameron notes that Mr. Donato's son's mother was the child's only caregiver. *Id.* at 13 (citing *Donato*, 2024 U.S. Dist. LEXIS 27620, at *15).

Next, Mr. Cameron addresses incapacitation, arguing that the Guidelines' reference to the incapacitation of a child's caregiver means "the inability to provide care." *Id.* at 14. He contends that "[t]he notion that it requires a much higher showing than this" derives from the definition in BOP (Bureau of Prisons) Program Statement § 5050.50(5) which "narrowly defines incapacitation as 'suffer[] a severe

injury (e.g., auto accident, or suffer[] from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child," *id.* at 14 (quoting BOP Program Statement § 5050.50), which was promulgated in January 2019 and thus "does not take into consideration the significant changes to [U.S.S.G.] §[]1B1.13 from the 2023 Amendments." *Id.* In any event, he says, BOP program statements are not binding on courts, *id.* (collecting cases), and "[e]ven before the 2023 Amendments . . . a number of courts granted sentence reductions merely because of a difficulty in providing care." *Id.* at 14-15 (collecting cases from federal district courts).

Mr. Cameron proffers that this Court's decision in *United States v. Bowers*, No. 16-cr-151-JAW, 2023 U.S. Dist. LEXIS 136506 (D. Me. Aug. 7, 2023) "reflects the view of these cases and anticipated the 2023 Amendments." *Id.* at 16. Mr. Cameron quotes from *Bowers*:

> The amendments also address how a court should treat arguments about family circumstances. In general, the amendments define family circumstances to require the incapacitation or death of a caregiver, which would not apply to Mr. Bower[s]'[] case, but extend to situations "similar in kind" to incapacitation of a caregiver.

*Id.* at 16 (quoting *Bowers*, 2023 U.S. Dist. LEXIS 136506, at *24). Quoting a footnote from that decision, he continues:

> The amendments generally loosen the existing criteria for compassionate release and add a catchall provision providing that courts may consider any other non-enumerated "other circumstances or combination of circumstances that . . . are "similar in gravity to" the enumerated circumstances. Absent additional guidance, the Court does not view this provision as substantively different from [the] "complex of circumstances" formulation [in <u>Ruvalcaba</u>[8]].

---

[8]    *United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022).

12

*Id.* at 17 (quoting *Bowers*, 2023 U.S. Dist. LEXIS 136506, at *24 n.5) (alterations made by Defendant).

Conceding that Mr. Bowers' family circumstances "reflect disfunction instead of the gradual inability of B.C. to provide care alone to D.C. due to his increasing unmanageability," the Defendant argues that his own case presents family circumstances that are "similar in gravity." *Id.* (emphasis removed). Mr. Cameron proffers that "other [r]elevant factors make Mr. Cameron's situation even more compelling [than *Bowers*]": (1) "Mr. Cameron had no prior criminal record, as opposed to Bower[s]'[] qualifying as an Armed Career Criminal"; (2) Mr. Cameron has served 150 months (94%) of his 160-month statutory sentence, while Mr. Bowers had only served seventy-two months (47%) of his 153-month statutory sentence; (3) "Mr. Cameron's demonstrated rehabilitation is at least as compelling as Mr. Bowers', as is his minimum risk of recidivism and the results of an application of the §[]3553(a) factors." *Id.* at 18-19.

**b.      Incarceration during the COVID-19 Pandemic**

Next, Mr. Cameron informs the Court that it should also take into account the "unexpectedly punitive conditions of confinement under COVID-19," *id.* at 19 (capitalization altered), noting "[r]ecently, a number of District Courts in the Northeast have considered the conditions suffered by inmates during incarceration during COVID-19, as being relevant in combination with other factors to justify a sentence reduction." *Id.* at 19-21 (citing *Donato*, 2024 U.S. Dist. LEXIS 27620, at *19) (then collecting cases).

###### c.    Rehabilitation

The Defendant proceeds to argue that the Court should consider his "remarkable rehabilitation" pursuant to U.S.S.G. § 1B1.13(d). *Id.* at 21. He directs the Court to his administrative request, which he puts forth summarizes his considerable personal growth through (1) his completion of the Capstone Curriculum of The Urban Ministry Institute in Denver, as well as his mentoring of new students after his graduation, all over the last nine years; (2) his successful completion of the nine-month custodial portion of the BOP's Residential Drug Abuse Program (RDAP), which involved mentoring other participants; (3) his work in the FCI Englewood Law Library and assistance to other inmates through this position; (4) he is rated as having a "minimum" risk of recidivism by the BOP'S PATTERN diagnostic tool; and (5) he has completed the Sexual Self-Regulation program at FCI Englewood. *Id.* He acknowledges his evidence of rehabilitation "is not sufficient by itself for a sentence reduction," but argues that these factors "substantially contribute[] to . . . showing that the totality of the circumstances are extraordinary and compelling." *Id.*

###### 2.    18 U.S.C. § 3553(a) Factors

Mr. Cameron argues that because he has fully served his 140-month statutory sentence in Case No. 09-cr-00024 for the distribution and possession of child pornography, "any sentence reduction granted pursuant to this motion cannot negatively reflect the seriousness of that sentence[;] [h]is restitution has also been fully paid." *Id.* at 22. Instead, he says, the Court should confine its consideration to his sentence in Case No. 13-cr-00001 for contempt of court. *Id.* Mr. Cameron says

14

that he does not want to "diminish [his] responsibility for this conduct," but notes that "the offense was very much related to his alcohol abuse at the time," of which he is "deeply ashamed." *Id.* He asks the Court to consider his successful completion of the RDAP program as a demonstration of his commitment to living a drug- and alcohol-free life. *Id.* Further, he says, a ten-month sentence reduction will not prevent the sentence from reflecting the seriousness of his contempt of court conviction. *Id.*

Mr. Cameron informs the Court that, if granted early release, he has a plan for employment, housing, transportation, health coverage, and continuing substance and sex offender treatment "that will exceed what is available in the BOP." *Id.* at 23.

### 3.    Exhaustion of Administrative Remedies

Mr. Cameron reports that he submitted his administrative request for sentence reduction to Warden J.F. Williams of FCI Englewood on June 5, 2024. *Id.* Observing that more than thirty days have passed since the Warden was provided with the request and that no action has been taken in response, the Defendant argues he has exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).[9] *Id.*

### B.    The Government's Opposition

The Government objects to Mr. Cameron's motion for sentence reduction, arguing that the Defendant has failed to establish extraordinary and compelling

---

[9]    The Court recites this fact as stated by Mr. Cameron in his motion for sentence reduction, submitted to the Court on September 16, 2024, but notes that the Government's opposition attached a response from the Warden of FCI Englewood, dated September 23, 2024, denying Mr. Cameron's request. *Gov't's Opp'n*, Attach. 3, *Letter in Resp.* (ECF No. 42-3) (*Admin. Resp.*).

reasons and the 18 U.S.C § 3553(a) factors do not support his early release. *Gov't's Opp'n* at 1.

The Government reports that the Defendant had served approximately 94.2% of his statutory sentence as of August 8, 2024, and his expected release date is May 16, 2025. *Id.* at 4. (citing *id.*, Attach. 4, *Sentence Monitoring Computation Data* (ECF No. 42-1)). The Government observes that Mr. Cameron's BOP disciplinary records reveal no meaningful disciplinary history, but it flags for the Court's attention that on or about October 5, 2022, the Defendant's release to a halfway house was revoked and "Inmate Cameron was remanded to custody because he presents a security concern based on his behavior/activity with a cell phone [and thus] cannot complete the Community Treatment Services portion of the [RDAP]." *Id.* (quoting *id.*, Attach. 2, *Req. to Delay, Remove or Reinstate Early Release* (ECF No. 42-2)). Mr. Cameron did not mention the revocation in his administrative request nor in his motion for reduction of sentence. *Id.*

In addition, the Government notes that the Warden of FCI Englewood denied Mr. Cameron's June 5, 2024 administrative request for sentence reduction on September 23, 2024. *Id.* at 5 (citing *Admin. Resp.*). The Government concedes that Mr. Cameron satisfied his statutory administrative exhaustion requirement "by submitting a request for reduction in sentence to the warden and receiving a denial." *Id.* at 6 n.2.

### 1.    Extraordinary and Compelling Reasons

### a.    Mr. Cameron's Family Circumstances

The Government concedes that an extraordinary and compelling reason no longer needs to have been unforeseen at the time of sentencing in order to warrant early release but argues that "where a circumstance is largely the same as when a defendant entered BOP custody, his justification for seeking compassionate release is neither extraordinary nor compelling, and thus not a basis for the Court to order compassionate release."  *Id.* at 6 (citing *United States v. Black*, No. 2:07-cr-00029-GZS, 2022 U.S. Dist. LEXIS 84753, at *6 (D. Me. May 11, 2022)).  The Government opines "the issues with the Defendant's son were well-known [when] [Mr. Cameron] was originally sentenced" and "likely contributed to the [C]ourt's decision to impose a variant sentence of 192 months rather than a guidelines sentence of 262-327 months at defendant's original sentencing."  *Id.* at 6-7.  The Government concludes this discussion by recognizing that, "as the Court has noted on many occasions, a defendant's sentence is imposed not only on him but on his entire family," and a long sentence often results in tragic hardship for family members which, on its own, does not amount to extraordinary and compelling reasons for early release.  *Id.* at 7.

### b.    Incarceration During the COVID-19 Pandemic

In response to Mr. Cameron's argument that the ongoing pandemic has made his "period of incarceration . . . far more onerous and punitive than this court anticipated when it sentenced him," *id.* (citing *Def.'s Mot.* at 13) (in turn citing *United States v. Stokes*, No. 19-cr-307, 2024 U.S. Dist. LEXIS 9845, at *6 (D. Conn. Jan. 19,

2024)), the Government directs the Court to *United States v. Stone*, 1:08-cr-00006-JAW, 2021 U.S. Dist. LEXIS 213599, at \*20-21 (D. Me. Nov. 4, 2021). *Id.* at 7-8. In *Stone*, the Government says, the Court concluded that "the pandemic, and its subsequent natural impacts in and of themselves do not present an 'extraordinary and compelling' justification for [a defendant's] release." *Id.* (quoting *Stone*, 2021 U.S. Dist. LEXIS 213599, at \*20-21 (in turn citing *United States v. Davis*, No. 2:15-cr-00186-GZS, 2021 U.S. Dist. LEXIS 171136, at \*3 (D. Me. Sept. 9, 2021)) ("The Court acknowledges that the ongoing pandemic is an extraordinary event for our entire country and has been especially challenging for the [BOP].  However, it is against this backdrop that a defendant must show individualized extraordinary and compelling reasons why he should not be required to serve the remainder of his sentence.")).  Here, the Government avers, Mr. Cameron has failed to make this individualized showing. *Id.* at 8.

### c.   Rehabilitation

The Government commends Mr. Cameron for his rehabilitative efforts, but notes that "while rehabilitation . . . may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted," it does not provide an independent extraordinary and compelling basis for compassionate release. *Id.* (quoting U.S.S.G. § 1B1.13(d)).

### 2.    18 U.S.C. § 3553(a) Factors

At bottom, the Government argues that the § 3553(a) factors do not support the Defendant's early release.  Regarding the Defendant's history and characteristics, the Government explains that at Mr. Cameron's December 17, 2014 sentencing hearing, the Court discussed how his underlying behavior with respect to his contempt of court conviction reflected poorly on his character, describing the Defendant as "selfish," "arrogant," and "not willing to abide by the laws that the rest of us abide by." *Id.* at 9 (quoting *Sent. Tr.* at 42, No. 09-cr-00024-JAW-1 (ECF No. 48)). Further, at sentencing the Court characterized Mr. Cameron's contempt of court as "frankly, very disturbing" because the Defendant was "on bail and with a promise not to run, a promise to the court, to the justice system, of which he was a part for so many years, that it was manifestly deliberate, conscious, planned, and unfortunately it took place many, many years after the descent into child pornography at a time when . . . whatever obsessions had led him to the child pornography should have been dissipated." *Id.* at 8-9 (quoting *Sent. Tr.* at 80).  In response to Mr. Cameron's suggestion that his character has changed during his period of incarceration, the Government points out that his removal from a halfway house in 2022 due to an inability to follow the rules "seems to suggest that some of the character issues from his previous life continue to manifest themselves in the present day." *Id.*

Turning to the other factors, the Government reminds the Court that at Mr. Cameron's sentencing in 2014, it found the Defendant's "particular brand of contempt of court . . . particularly egregious." *Id.* at 9 (quoting *Sent. Tr.* at 83).  The Government

further opines that the Defendant committed a very serious crime that warranted a lengthy sentence, such that the goals of specific and general deterrence would not be served by sentence reduction because "[b]oth the defendant and the general public must be put on notice that flouting the orders of a federal court will have serious consequences." *Id.* at 10.

### C.    Mr. Cameron's Reply

Mr. Cameron takes issue with the Government's reliance on *Black*, 2022 U.S. Dist. LEXIS 84753, its treatment of Mr. Cameron's alleged "extraordinary and compelling reasons" in isolation from one another, and its characterization of the Defendant's cellphone use while at a halfway house.

First, Mr. Cameron argues *Black* is inapposite to his motion because the *Black* decision "does not set forth any details as to what Black's wife's condition was when he went into the BOP as compared to what it was when he applied for compassionate release." *Def.'s Reply* at 1.  He says that the 2023 amendments to the Sentencing Guidelines did away with the requirement that "extraordinary and compelling reasons" must have been unforeseen at the time of sentencing; *Black* was decided in 2022 and thus could not reflect this change.  *Id.* at 1-2.  In addition, "the government does not know, and they have proffered no evidence," that D.C. is in the same condition now as he was at the time of Mr. Cameron's sentencing, or that B.C. is as capable, ten years later, to physically handle their twenty-nine-year-old son.  *Id.* at 2.

Second, Mr. Cameron reminds the Government that U.S.S.G. § 1B1.13(b)(5) allows the Court to consider "any combination of circumstances" in ruling on a motion for compassionate release. *Id.* He alleges the Government erred by failing to consider his arguments regarding his family circumstances, the ongoing pandemic, and his efforts at rehabilitation in the aggregate. *Id.*

Finally, Mr. Cameron avers that he did not knowingly misuse a cellphone while at a halfway house. *Id.* He acknowledges that he contacted a lawyer about setting up a business when he arrived at the halfway house, and the lawyer subsequently sent Mr. Cameron an email. *Id.* However, he tells the Court that "[a]t no time did Mr. Cameron engage in any illegal conduct with his cellphone, or engage in any inappropriate conduct with his cell phone." *Id.*

## III.    DISCUSSION

### A.    18 U.S.C. § 3553(a) Factors

To grant an incarcerated person's motion to reduce a sentence, the Court must find that "extraordinary and compelling reasons warrant" the movant's sentence reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i); *accord United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) ("Next, the district court must consider any applicable 3553(a) factors and 'determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case'") (quoting *United States v. Saccocia*, 10 F.4th 1, 4 (1st Cir. 2021)). 18 U.S.C. § 3582(c)(1)(A) also requires any sentence reduction to be "consistent with applicable

policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii).[10]

The Court, then, must begin by considering the factors set forth in § 3553(a), to the extent they are applicable. These factors are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . ," "to afford adequate deterrence," "to protect the public from further crimes," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"; (3) "the kinds of sentences available"; (4) "the kinds of sentencing and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and

---

[10]      In *United States v. Rivera-Rodríguez*, 75 F.4th 1 (1st Cir. 2023), the First Circuit noted that its caselaw had "clarified that, because (up until recently) the Commission had not issued any policy statements applicable to the prisoner-initiated motions for compassionate release, district courts 'ha[d] discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release.'" *Id.* at 18 n.22 (quoting *Ruvalcaba*, 26 F.4th at 23).

In the time since, however, "the Sentencing Commission has promulgated new guidelines relevant for compassionate release motions, which we expect district courts to take heed of when determining whether an individual meets the statute's requirements for such relief." *Id.* (citing Amendments to the Sentencing Guidelines, U.S. Sentencing Commission (Apr. 27, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023).

The Court takes heed of this change. The Court notes the most recent amendment revises U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A). Given this amendment, the policy statement is now applicable to both defendant- and BOP-filed motions and consequently will be considered in this defendant-initiated motion.

(7) "the need to provide restitution to any victims in the offense."  18 U.S.C. § 3553(a)(1)-(7).

First, the Court responds to Mr. Cameron's argument that he has fully served his sentence in Case No. 09-cr-00024 for the distribution and possession of child pornography, such that "any sentence reduction granted pursuant to this motion cannot negatively reflect the seriousness of that sentence," and the Court should thus confine its consideration to his sentence in Case No. 13-cr-00001 for contempt of court. *Def.'s Mot.* at 22.  The Court finds this an improper reading of 18 U.S.C. § 3553(a)(1), which instructs courts reviewing motions for compassionate release to consider both the "nature and circumstances of the offense" and "the history and characteristics of the defendant."  Thus, the Court will consider Mr. Cameron's full "history and characteristics" pursuant to § 3553(a).

As the Government correctly points out, the Court considered the§ 3553(a) factors at length in its December 17, 2014 sentencing of Mr. Cameron on the criminal contempt charge. *See Gov't's Opp'n* at 8-9.  The Court again reviewed Mr. Cameron's criminal history in considering this motion.  What stands out is that Mr. Cameron has a history of evading responsibility and that his underlying offenses involve crimes against children.  At the dual sentencing on December 17, 2014, the Court observed that Mr. Cameron "did what often is done in child pornography cases and that is that their criminal activities are hidden as best they can, and he used multiple screen names and wiping software and that type of thing." *Sent. Tr.* at 40.  Once he was discovered, the Defendant "engaged in this extraordinarily aggressive . . . criminal

23

defense in which he basically accused the U.S. Attorney of retribution." *Id.* He was convicted and then appealed, which is his right. *Id.* However, while the appeal was pending, Mr. Cameron demanded to be released on bail, promising to the Court that he would not flee and would not commit any additional crimes. *Id.* at 41. Mr. Cameron broke this promise: he planned his flight from justice by, among other things, procuring a check-printing device, printing false checks, and fraudulently attempting to cash them. *Id.* The Court emphasized at Mr. Cameron's sentencing on the criminal contempt charge that the Defendant's actions did not indicate "a man who had second thoughts"; he planned his flight in calculated detail. *Id.*

At the sentencing, the Court explained its earlier aversion to releasing Mr. Cameron on bail pending the First Circuit appeal of the child pornography charges:

> The reason I thought he should remain in jail was two-fold: First, he'd shown a remarkable lack of self-control regarding his obsession with child pornography . . . and I was worried that somebody who was that obsessed with child pornography might, if released, do something untoward, and my overriding obligation is to protect children, protect the people in society who can't protect themselves.

*Id.* at 43. These issues still concern the Court. At Mr. Camerons' sentencing, the Court acknowledged that his case involved "a modest number of images, with relatively low-quality images, with recycled images, with an individual who did not create the images." *Id.* at 49. The Court acknowledged these limits on the Defendant's criminal conduct at sentencing, and, as the Government now points out, the Court imposed a variant sentence of 192 months rather than a guidelines sentence of 262-327 months. *Gov't's Opp'n* at 6-7. However, this does not negate that Mr. Cameron's earlier offenses involve crimes against children, the most vulnerable

24

members of our society. Mr. Cameron asks the Court to grant him compassionate release, but his own criminal history and earlier offenses exhibit a substantial and grave lack of concern for the well-being and protection of children.

The Court's consideration of Mr. Cameron's present motion affirms its prior conclusion. The Court recognizes and credits the efforts that Mr. Cameron has made at rehabilitation in prison and recommends to Mr. Cameron that he continue these efforts as they will help him reintegrate as a productive member of society when he is released from BOP custody. However, in his motion, Mr. Cameron has not met his burden to show that he is no longer a danger to the community. The gravity of Mr. Cameron's criminal history, the nature and circumstances of the offense, and the continued danger the Court fears he may pose to the public all weigh against early release. Indeed, the Court is hesitant to grant early release to an individual currently serving a sentence for criminal contempt of court after fleeing, across state lines, and requiring the massive expenditure of government resources to secure his capture. Moreover, the Court does not believe that the goals of general or specific deterrence of such conduct would be served by early release. Altogether, the Court agrees with the Government that the § 3553(a) factors all warrant a denial of the defendant's motion. *Gov't's Opp'n* at 8-10.

## B.    Extraordinary and Compelling Reasons

To grant Mr. Cameron's petition under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING

COMM'N 2018).[11]  To aid courts in this determination, the Sentencing Commission issued a policy statement offering six categories of extraordinary and compelling bases warranting a sentence reduction:  the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence."  U.S.S.G. § 1B1.13(b).

The movant bears the burden of showing his or her entitlement to a sentence reduction, and "the Court 'has broad discretion in deciding whether to grant or deny a motion for sentence reduction.'"  *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 U.S. Dist. LEXIS 83396, at *4 (D.N.H. May 12, 2020) (internal citation omitted)).

Mr. Cameron argues that his "ex-wife's situation with [D.C.] meets the criteria for compassionate release in U.S.S.G. § 1B1.13(b)(3), or 'is similar in gravity' to this criteria (§[]1B1.13(b)(5)) so as to by itself or in combination with other reasons described in this request constitute an extraordinary and compelling set of circumstances that justify a 10-month sentence reduction on a 196-month sentence."  *Def.'s Mot.* at 8.

---

[11]    On April 5, 2023, the United States Sentencing Commission submitted Amendment 814 to Congress, as a response to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), which permits criminal defendants to file motions for sentence reduction directly, as opposed to such motions being permitted only from the Bureau of Prisons; this amendment became effective on November 1, 2023.  *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814.  Among other things, Amendment 814 revised the list of "extraordinary and compelling reasons" that may warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See* U.S.S.G. § 1B1.13(b) (Nov. 1, 2023) (listing extraordinary and compelling reasons); *see also U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814, Reason for Amend. at 206 ("The amendment expands the list of specified extraordinary and compelling reasons and retains the 'other reasons' basis").

### 1.    Section 1B1.13(b)(3)(A): Family Circumstances

Mr. Cameron first asserts that he is entitled to sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(3)(A), which states in relevant part that extraordinary and compelling reasons may exist due to "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." The U.S. Sentencing Commission does not define "incapacitation" in the context of compassionate release. *See* U.S.S.G. § 1B1.13.

In the absence of specific guidance from the U.S.S.G., other district courts across the country have looked to the BOP's non-binding Program Statement for guidance on processing compassionate release requests. *See, e.g., United States v. White*, Crim. Action No. 16-40 Sec. "R" (4), 2021 U.S. Dist. LEXIS 83038, at *4 (E.D. La. Apr. 30, 2021) (citing Federal Bureau of Prisons Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (BOP Program Statement § 5050.50), at 10; *United States v. Bolden*, No. 16-320, 2020 U.S. Dist. LEXIS 132716, at *4 (W.D. Wash. July 27, 2020) (looking to the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 U.S. Dist. LEXIS 127801, at *2 (D.N.J. July 21, 2020) (same); *United States v. Collins*, No. 15-10188, 2020 U.S. Dist. LEXIS 5001, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well")).

The BOP's Program Statement provides two definitions for the word "incapacitation." First, as to "the caregiver of the defendant's minor child or minor children," the Program Statement states: "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50. Second, as to "[t]he incapacitation of the defendant's spouse or registered partner," the Program Statement says:

> 'incapacitation' means the inmate's spouse or registered partner has: [s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

*Id.* at 10.

Here, the Defendant essentially argues that it is increasingly challenging for his ex-wife to serve as the sole caretaker to their shared son, now twenty-nine years old, because she is sixty-two years old and gradually aging, D.C. is taller and weighs 150 pounds more than her, and he can become aggressive when refused his unreasonable demands. *Admin. Req.* at 5. Mr. Cameron says that taking care of D.C. "was never easy," but describes his ex-wife as "[t]he frog [that] never realized until now that it is time to jump from the pot, and the water is boiling." *Def.'s Mot.* at 9. Discussing the definition of "incapacitated" in the Webster's College Dictionary, he avers that B.C. is "'incapacitated' from being able to provide D.C. ongoing care in the

sense that she has 'become deprived of the ability, qualification, or strength' to do so."
*Id.* at 11 (quoting R<span>ANDOM</span> H<span>OUSE</span> W<span>EBSTER'S</span> C<span>OLLEGE</span> D<span>ICTIONARY</span> at 664 (1999)).

The Court is sympathetic to B.C.'s situation. However, Mr. Cameron has not established that his family circumstances amount to an "extraordinary and compelling" reason because he has not shown his ex-wife is incapacitated as courts have interpreted the meaning of the Sentencing Guidelines. He has not submitted medical records showing, nor even argued, that B.C. has "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled," BOP Program Statement § 5050.50 at 10, or that she "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *Id.* at 7, 10. Instead, Mr. Cameron has told the Court, and the Court takes him at his word, that his ex-wife is exhausted and would like more support. This does not, however, amount to a showing that D.C.'s caretaker is incapacitated.

As the Government pointed out, the Court often, including previously in this case, acknowledges that it never sentences the defendant alone, but that its sentencing decisions affect defendants' families, coworkers, friends, and community. When a defendant is incarcerated, it places a heavy burden on the members of their family and community to assist with, among other things, family caregiving responsibilities. These consequences are, unfortunately, the reality of incarceration and the Court does not impose this burden lightly. That said, this is the reality for

all incarcerated defendants and thus cannot be considered "extraordinary" to Mr. Cameron's case for the purposes of granting early release.

The Court concludes that Mr. Cameron has not shown "extraordinary and compelling reasons" for sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(3)(A).

### 2.    Section 1B1.13(b)(5): Other Reasons

Alternatively, Mr. Cameron asserts that he is entitled to sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(5), the "other reasons" category: "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  He argues that if the Court concludes that B.C. is not, strictly speaking, "incapacitated," her situation of reaching the end of her rope as D.C.'s only caregiver is "similar in gravity" to such a situation. *Def.'s Mot.* at 11.

The Defendant analogizes his case to *Bowers*, 2023 U.S. Dist. LEXIS 136506, in which this Court granted a defendant's motion for compassionate release, and argues that "other [r]elevant factors make Mr. Cameron's situation even more compelling[:]" (1) "Mr. Cameron had no prior criminal record, as opposed to Bower[s]'[] qualifying as an Armed Career Criminal"; (2) Mr. Cameron has served 150 months or 94% of his 160-month statutory sentence, while Mr. Bowers had only served 72 months of 47% of his 153-month statutory sentence; (3) "Mr. Cameron's demonstrated rehabilitation is at least as compelling as Mr. Bowers', as is his minimum risk of recidivism and the results of an application of the §[]3553(a) factors."

*Id.* at 18-19.   He also urges the Court to consider the "unexpectedly punitive conditions of confinement under COVID-19," *id.* at 19, and his rehabilitation.   *Id.* at 21.

As the Court noted in *Bowers*, determinations of "extraordinary and compelling relief" involve consideration of 3553(a) factors and thus are individualized and fact specific.   *Bowers*, 2023 U.S. Dist. LEXIS 136506, at *15-16 (quoting *Ruvalcaba*, 26 F.4th at 27-28) (describing a court's review of compassionate release motions as an "[individualized assessment of a myriad of factors], case by case").   Despite Mr. Cameron's analogy, there are notable differences between this case and *Bowers*. First, the *Bowers* case was highly unusual because the Court was able to view almost the entire firearm possession crime as most of it was captured on videotape.   As a felon, Mr. Bowers should not have had a firearm, but he tucked one into the back pocket of his jeans when he visited an auto repair business on the day of the incident. *Bowers*, 2023 U.S. Dist. LEXIS 136506, at *2-3.   As the Court recalls, the owner of the business had words with Mr. Bowers, became increasingly irate, began slamming a large wrench against his hand, and suddenly lunged forward, striking Mr. Bowers in the head.   *Id.*, at *3.   The Court was able to see that Mr. Bowers momentarily fidgeted with the pistol in his back pocket as the owner became increasingly irate, but Mr. Bowers did not remove the pistol from his pocket.   *Id.*   The owner's unwarranted physical assault caused Mr. Bowers to suffer a significant traumatic brain injury.   *Id.*

Unfortunately, based on his prior criminal record, Mr. Bowers was subject to a 180-month mandatory minimum sentence under the Armed Career Criminal Act, and at the sentencing hearing, the Court was troubled by harshness of the sentence of 180 months it was required to impose, based on its view of the videotape. From the Court's perspective, although Mr. Bowers merited some punishment because he should not have had a gun, he should not have been subject to such a long sentence, because—in extreme circumstances, when faced with a large, angry man threatening him with a wrench—he did not use the gun, and instead became the victim of a brutal assault. Thus, unlike Mr. Cameron's case, who downloaded horrible images of child pornography and broke his bail conditions and fled, Mr. Bowers' case was extraordinary and compelling in a way Mr. Cameron's is not.

In addition, Mr. Bowers' son suffered from severe depression, engaged in self-harm, and had twice attempted suicide. *See id.*, at *8-9. Mr. Bowers also averred that his son had been abandoned by the defendant's common law wife. *Id.* at *8. The Court found this to be an "acute family situation." *Id.*, at *17. Furthermore, Mr. Bowers suffered from his own health problems, including, as discussed above, a traumatic brain injury. *Id.* at *7. The Court also determined that the 3553(a) factors weighed in favor of Mr. Bowers' release and that he would not pose a danger to the community. *Id.* at *18. Put simply, the Court does not find Mr. Cameron's case for a reduced sentence to be analogous with the relief granted in *Bowers*.

In evaluating Mr. Cameron's motion, the Court has assumed that he is correct in his assertion that he is now serving the twenty-four-month consecutive sentence

that the Court imposed due to his contempt of court. If so, from the Court's perspective, Mr. Cameron's actions in jumping bail and fleeing were especially egregious. Mr. Cameron's child pornography offenses were morally repugnant and incalculably harmful to innocent victims, and he fully merited the severe sentence the Court imposed. But his disappearance after the First Circuit handed down its decision on his appeal was inexplicable and dishonorable. Once the Court found Mr. Cameron guilty of the child pornography offense, he was subject to mandatory detention under the law. He rankled at his detention and moved this Court to release him, because he was appealing his case to the Court of Appeals for the First Circuit. The Court denied his motion for release not so much because it thought he would run, but because it was concerned that, facing a long period of incarceration, he might hurt himself. Moreover, the issues Mr. Cameron intended to raise on appeal were applicable to only some, not all, of his counts of conviction, so he should have been subject to continued mandatory detention regardless of the merits of his appeal. Nevertheless, Mr. Cameron managed to convince the Court of Appeals to release him pending appeal, and, despite its misgivings, this Court was compelled to release him with conditions of release and bail restrictions. Mr. Cameron's motions for release contained the implicit and express promise that he would obey the conditions of release. He did not.

The moment the Court of Appeals issued its decision, affirming many of the child pornography convictions, Mr. Cameron bolted. During his sentencing hearing, the Court discussed the fact that Mr. Cameron had planned out his flight, had

obtained a check-writing machine and had produced fraudulent checks, which he had attempted to cash, and was found near the Mexican border in New Mexico after a two-week national manhunt.  As he acknowledged at his sentencing hearing, Mr. Cameron's decision to jump bail and become a fugitive from justice were in his words, the "worst decisions I've ever made."  *Sentencing Tr.* at 59:8-10.  The Court has considered the seriousness of this offense in evaluating whether to grant Mr. Camerons' motion for compassionate release and reiterates its conclusion that the twenty-four-month consecutive sentence was more than amply justified by Mr. Cameron's extraordinarily contemptuous conduct.

The Court concludes that Mr. Cameron has not met his burden of showing he is entitled to compassionate release pursuant to U.S.S.G. § 1B1.13(b)(5).  The Court finds it dispositive that the Sentencing Commission expressly considered the circumstances under which a court may find that a defendant's family circumstances presented "extraordinary and compelling reasons."  *See* U.S.S.G. § 1B1.13(b)(3).  In terms of the caregiver of a defendant's child, the Sentencing Commission instructs that these reasons exist where "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition."  *See* U.S.S.G. § 1B1.13(b)(3)(A).  As discussed above, the Court does not find that Mr. Cameron has shown "extraordinary and compelling reasons" satisfying the standard provided by § 1B1.13(b)(3)(A).  Despite his conclusory assertions, Mr. Cameron has also failed to establish why his "circumstance is clearly similar in

gravity," and why the Court should take a broader view of § 1B1.13(b)(3)(C) than the Sentencing Commission did.

Finally, Mr. Cameron's argument that early release is warranted due to the "unexpectedly punitive conditions of confinement under COVID-19," *Def.'s Mot.* at 19, and his efforts at rehabilitation, *id.* at 21, also fail to establish he has "extraordinary and compelling reasons" justifying sentence reduction. The experience of incarceration during the ongoing pandemic was unfortunately experienced by all incarcerated individuals and is thus not extraordinary to Mr. Cameron's case.

In sum, the Court concludes that Mr. Cameron has not shown "extraordinary and compelling reasons" demonstrating that he is entitled to compassionate release pursuant to U.S.S.G. § 1B1.13(b)(5).

## IV. CONCLUSION

The Court DISMISSES the Defendant's Expedited Motion for Reduction of Sentence (ECF No. 40) without prejudice.

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 12th day of December, 2024